**Link: 12**

```
┌─────────────────────────┐   ┌─────────────────────────┐
│         ENTERED         │   │          FILED          │
│ CLERK, U S DISTRICT COURT│  │ CLERK, U S. DISTRICT COURT│
│                         │   │                         │
│      FEB - 8 2006       │   │      FEB - 7 2006       │
│                         │   │                         │
│CENTRAL DISTRICT OF CALIFORNIA│ │CENTRAL DISTRICT OF CALIFORNIA│
│BY            DEPUTY     │   │BY            DEPUTY     │
└─────────────────────────┘   └─────────────────────────┘
```

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCENARY PICTURES, INC., et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>WORLD WIDE RED LIGHT DIST., )<br>INC., et al., )<br><br>Defendants. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. CV 05-6201 GAF (RCx)**<br><br>**MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS, TO STRIKE, AND FOR A MORE DEFINITE STATEMENT** |

I.

### INTRODUCTION & FACTUAL BACKGROUND

Plaintiffs Mercenary Pictures, Inc. ("Mercenary") and its President Clifton Britt, who acts in adult movies under the name and trademark "Lexington Steele," own copyrights in the six adult films at issue is this case (the "Movies").  (Compl. ¶ 3). Mercenary is the sole licensee of the "Lexington Steele" name/mark, (id. ¶ 17), which "features prominently in the Movies."  (Id. ¶ 61).

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)



In January 2003, Mercenary entered into an oral agreement with World Wide Red Light District, Inc. ("RLD") under which RLD would distribute all videos and DVDs produced and directed by Britt for Mercenary. (Id. ¶ 20). The agreement obligated Mercenary to deliver master recordings to RLD and to pay RLD a 25% distribution fee based on gross profits and 100% of all monies advanced to RLD to finance production of the movies. (Id. ¶¶ 23, 27, 28, 45). The remaining revenue was to be accounted for and delivered to Mercenary. (Id. ¶¶ 22, 23, 40, 46). The oral agreement allegedly provided that Mercenary and Britt retained all rights, title and interest in the Movies, including the copyrights in the Movies. (Id. ¶ 22). This agreement was allegedly extended to December 31, 2004. (Id. ¶ 32).

Since the agreement expired, RLD has allegedly continued to market and distribute the licensed Movies, and has never returned the master recordings to Mercenary. (Id. ¶¶ 3, 32, 41, 49). RLD, however, claims ownership in the Movies. (Id. ¶¶ 94, 95). Mercenary produces and distributes the Movies, for a higher price than RLD, including new volumes and "collector's editions" of the Movies in competition with RLD's marketing of them. (Id. ¶ 55). In addition, Plaintiffs allege RLD's sale of the Movies interferes with Plaintiffs' "right to license the Movies to third parties." (Id. ¶ 73).

Mercenary alleges that RLD breached the agreement and did not use its best efforts to maximize revenues during the term of the agreement. (Id. ¶ 79). It contends that RLD's president, Dion Giarrusso, stole several copies of the Movies from RLD's warehouse and sold copies of them without accounting for the revenues as required under the agreement. (Id. ¶¶ 7, 29, 36, 96). Giarrusso and Joseph, RLD's current president, allegedly knew of the theft, but when confronted by Britt, they concealed and covered it up and threatened to sue Plaintiffs unless Mercenary agreed to allow distribution for an additional year. (Id. ¶¶ 31, 32, 79). In addition, Plaintiffs also contend that they have never been provided with an accounting as required under the agreement. (Id. ¶¶ 33, 34).

Plaintiffs state fifteen federal and state law causes of action related to Defendants' alleged illegal distribution of the Movies.  Defendants move to dismiss numerous claims based on federal copyright preemption and also ask this court to strike various statements or order a more definite statement on the claims.  The Court addresses each claim in turn.  For the reasons set forth herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

II.

## DISCUSSION

### A. THE LEGAL STANDARD GOVERNING THE MOTION TO DISMISS

A motion to dismiss a complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) tests the legal sufficiency of the claims asserted.  A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In evaluating a motion to dismiss, the Court "must accept as true all material allegations in the complaint and construe the complaint in the light most favorable to the plaintiffs." Kelson v. City of Springfield, 767 F.2d 651, 653 (9th Cir. 1985).  Dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

### B. THE MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

Defendants move to dismiss seven of Plaintiffs' causes of action on the ground that they are preempted by federal copyright law.  Those claims include: (1) misappropriation of common law right of publicity; (2) tortious interference with economic advantage; (3) unjust enrichment; (4) unfair business practices; (5) conversion; (6) declaratory relief; and (7) an accounting.

### 1. THE FEDERAL PREEMPTION LEGAL STANDARD

A state law cause of action is preempted by the Copyright Act if two elements are present: "(1) the *work* must be within the scope of the subject matter of copyright [as set forth in 17 U.S.C. §§ 102 and 103]; and (2) the asserted state law *right* must be equivalent to any exclusive rights within the scope of federal copyright," i.e., reproduction, preparation of derivative works, *distribution*, performance or display. Entous v. Viacom Int'l, Inc., 151 F. Supp. 2d 1150, 1158-59 (C.D. Cal. 2001) (citations and quotation marks omitted) (emphases added); see also Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 976 (9th Cir. 1987).

With regard to the first element, "copyright protection subsists, in accordance with this title, in original works of authorship . . . [including] motion pictures and other audiovisual works. . . ." 17 U.S.C. § 102(a).  Since the copyrighted works, i.e., the Movies, are all "works of authorship," i.e., "motion pictures," and within the broad definition thereof given by the Act, each claim based on these works satisfies this first prong of the preemption test. See 17 U.S.C. §§ 101, 102(a)(6); see also Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001).

As to the second element, "[i]n order not to be equivalent [and avoid federal preemption], the right under state law must have an 'extra element' that changes the nature of the action so that it is qualitatively different from a copyright infringement claim." Entous, 151 F. Supp. 2d at 1159 (internal citations and quotation marks omitted).  "The extra element . . . must be one which changes the nature of the action so that it is qualitatively different from the copyright infringement claim." Motown Record Corp. v. George A. Hormel & Co., 657 F. Supp. 1236, 1239 (C.D. Cal. 1987) (citations omitted) (emphasis added).

### 2. FEDERAL PREEMPTION ANALYSIS OF PLAINTIFFS' STATE LAW CLAIMS

#### i. *Plaintiffs' Right of Publicity Claim as Pled is Preempted*

In California, an individual's right of publicity is invaded if another person or entity appropriates for his or its advantage the individual's name, image, identity or

likeness. Fleet v. CBS, Inc., 50 Cal. App. 4th 1911, 1918 (Ct. App. 1996). Professor Nimmer's treatise on Copyright teaches that a misappropriation of one's right of publicity "may sometimes occur by acts of reproduction, distribution, performance, or display, but inasmuch as the essence of the tort does not lie in such acts, pre-emption should not apply." 1 Melville B. Nimmer, et al., Nimmer on Copyright § 1.01[B][1][c], at 1-23 (2003) ("Nimmer"). As pled, Plaintiffs' Complaint fails to allege that Defendants' reproduction or distribution encompassed anything but those acts and as such, the claim does not contain a qualitatively "extra element which changes the nature of the action." See Motown Record Corp., 657 F. Supp. at 1240. Having considered both parties' cited authorities, the Court concludes that Plaintiffs' claim that Britt's right of publicity has been infringed by the display and distribution of the Movies without his permission is indistinguishable from the copyright claim. Thus, as pled, Plaintiffs' claim is subsumed by the Copyright Act and therefore preempted.

### ii. Plaintiff's Interference with Economic Advantage Claim as Pled is Preempted

In order to plead a claim for prospective interference, Plaintiffs must plead, among other elements: (1) an economic relationship between the plaintiff and some third person that includes the probability of future economic benefit to the plaintiff; and (2) knowledge by the defendant of the existence of the relationship. See Conkle v. Jeong, 73 F.3d 909, 918 (9th Cir. 1995) (citing Blank v. Kirwan, 39 Cal. 3d 311 (1985)).

Plaintiffs' claim fails for several reasons. First, the Complaint does not adequately allege interference with any relationship between Plaintiffs and a third party. Plaintiffs' Complaint only generally alleges interference with "Plaintiffs' right to license the Movies to third parties." (Compl. ¶ 93). It is clear that Plaintiffs must show some specific prospective business relationship. Lattie v. Murdach, No. C-96-2524 (MHP), 1997 U.S. Dist. LEXIS 3558, at *15-*16 (C.D. Cal. Jan. 8, 1997). Second, Plaintiffs' claim as pled is preempted since it amounts to nothing more than the

assertion that defendants have interfered with their ability to exploit their copyrighted works, which is protected by copyright. See Aagard v. Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (claim preempted since it alleged a "violation of essentially the same rights provided for in the Copyright Act."). Pleading the additional elements of awareness and intentional interference, which are not part of a copyright infringement claim, does not establish qualitatively different conduct on the part of the infringing party where the essence of the claim is the act of infringement. See Harper & Row, Publishers v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1983) (rev'd on other grounds). Finally, even if the Court reached a different conclusion as to RLD, the claim as to Giarrusso is defective since it fails to allege any facts to establish that he had any knowledge of a relationship with a third party. Thus, as pled, Plaintiffs' claim for intentional inference with an economic advantage is deficient.

### iii. As Pled, Plaintiffs' Unjust Enrichment Claim is Preempted

Professor Nimmer concludes that "a state law cause of action for unjust enrichment or *quasi* contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter." Nimmer, § 1.01[B][1][g] at 1-41.

Despite their vigorous assertions to the contrary, Plaintiffs' pending unjust enrichment claim asserts the same factual basis as that giving rise to the copyright claim – that Defendants wrongfully used Plaintiffs' copyrighted film and received a financial benefit. In these circumstances, any recovery for unjust enrichment duplicates the recovery that is sought for the copyright violation. As one district court recently noted,

> [w]hile a claim for unjust enrichment may require proof that a benefit was conferred on the defendant, where the unjust enrichment arises from defendants' unauthorized use of a copyrighted work, such an extra element does not qualitatively change the rights at issue, the rights the plaintiff holds in the copyrighted work, and does not avoid preemption.

Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003). The Court agrees with Zito's reasoning and holding. This conclusion is reinforced by the fact that Plaintiffs expressly incorporated their copyright claim and supporting facts into the unjust enrichment claim, thereby fatally blurring any distinction that might otherwise exist. (Compl. ¶ 75). Therefore, where, as here, the copyright law provides for the same recovery and the unjust enrichment claim does not require proof of a qualitatively different element, Plaintiffs' claim fails.

### iv. Plaintiffs' Unfair Business Practices Claim is Not Preempted

California Business and Professions Code §§ 17200, et seq. ("Section 17200") prohibits any unlawful, unfair or fraudulent business practice. Kodadek v. MTV Networks, 152 F.3d 1209, 1212 (9th Cir. 1998). It functions by "borrowing violations of other laws and treating those transgressions, when committed as a business activity, as unlawful business practices." Stevens v. Super. Ct., 75 Cal. App. 4th 594, 602 (Ct. App. 1999) (internal citations and quotation marks omitted). While private litigants' remedies under Section 17200 are "strictly limited to injunctive relief and restitution," Mai Sys. Corp. v. UIPS, 856 F. Supp. 538 (N.D. Cal. 1994), in a proper case damages may be recovered for unfair business practices that are prohibited by statute even though Section 17200 sounds in equity and does not specify that damages may be awarded. United Farm Workers of Am. v. Super. Ct., 37 Cal. App. 3d 334, 344 (Ct. App. 1975).

Here, RLD is alleged to violate Section 17200 by "misrepresenting information to Plaintiffs . . . [and by] failing to provide proper accounting." (Compl. ¶ 89). Plaintiffs' Section 17200 claim clearly seeks to vindicate rights outside the scope of those within the copyright claim. For example, misrepresentation and failure to account for revenue are not "equivalent" to those rights that Plaintiffs have asserted stemming from reproducing and distributing the Movies. In this case Plaintiff asserts that the parties agreed that RLD was permitted to distribute the Movies, but only with a proper accounting. (Id. ¶ 22). The unfair business claim alleges in part that the

Defendants' failure to account violated Section 17200.  Cf. Kodadek, 152 F.3d at 1213 (Section 17200 claim preempted since Plaintiffs based it on rights granted and protected by the Copyright Act).  Thus, since Plaintiffs' Section 17200 claim would still survive even if no copyright infringement occurred, it is not preempted by federal law.

### v.  Plaintiffs' Conversion Claim is Not Preempted

Plaintiffs' conversion claim is not preempted.  This Circuit squarely holds that "[c]onversion of tangible property involves actions different from those proscribed by the copyright laws, and thus is not preempted." Oddo v. Ries, 743 F.2d 630, 635 (9th Cir. 1984); Nimmer, § 1.01[B][1][i], at 1-44.  However, the Court notes that the claim is viable only to the extent that it seeks the recovery of wrongfully withheld tangible property.  See Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) ("claims for conversion of physical property or for misappropriation involve an extra element beyond unauthorized copying.").   The tort cannot be used as a means of seeking recovery for the wrongful use of intangible property rights.

### vi.  Plaintiffs' Declaratory Relief is Not Subject to Preemption

Declaratory relief is a procedural device that allows a party to seek a determination of its legal rights and duties.  Here Plaintiffs have alleged viable claims under copyright and contract, and essentially the Court will be required to determine those rights.  Declaratory relief is merely a mechanism for doing so.  As such, this procedural device is not preempted.

### vii.  Action for an Accounting is Not Preempted

"An accounting and determination of ownership rights are matters of state law and should not be preempted." Dorsey v. Money Mack Music, Inc., 304 F. Supp. 2d 858, 864 (E.D. La. 2003).  Plaintiffs may allege an accounting claim based on their oral agreement, irrespective of any copyright infringement by Defendants, especially since Plaintiffs allege Defendants' promise of an accounting was part of the consideration for the oral agreement.  As such, this claim is not preempted.

### viii. Conclusion

As set forth herein, Defendants' motion to dismiss based on federal copyright preemption is **GRANTED IN PART** and **DENIED IN PART**: **GRANTED** as to Plaintiffs' right of publicity, intentional interference with prospective advantage claim, and unjust enrichment claim; but **DENIED** as to the unfair business practices, conversion, declaratory relief, and accounting claims.

### 3. DEFENDANTS' MOTION TO STRIKE THE AFOREMENTIONED STATE LAW CLAIMS

To the extent that Defendants' motion to dismiss is denied as to certain claims – unfair business practices, conversion, declaratory relief, and accounting – Defendants seek to strike these claims to the extent they are based on the alleged distribution of the copyrighted Movies.  However, Plaintiffs' alleged facts, even to the extent they may slightly overlap with the copyright claim, are not so "redundant, immaterial, impertinent, or scandalous" so as to warrant striking them.  See Fed. R. Civ. P. 12(f); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Moreover, motions to strike are disfavored by the courts and are of limited importance.  William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 9:375 at 9-94.2.  As such, Defendants' motion to strike these potentially overlapping factual assertions is **DENIED**.

### B. PLAINTIFFS' INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIMS

Plaintiffs assert two bases supporting their fraud claims.  These representations include:

(a) from February 2003 to present Defendants made *false promises* to Plaintiffs that they would do the utmost to perform services to them to maximize revenue in the adult movie distribution business; [and] (b) [f]rom September 2003 to present, Giarrusso and David Joseph *concealed* the extent of Giarrusso's inventory-stealing activities in order to placate Plaintiffs and to cover up Defendants' actions.

(Compl. ¶ 79 (emphases added)).  Plaintiffs' first alleged misrepresentation, "(a)," lacks any specificity regarding who made the statement, to whom it was made, when specifically it was made, what about the statement was false, and what is meant by doing "the utmost to perform services."  At oral argument Plaintiffs' counsel suggested that since Defendants are one corporation and one individual, that by process of elimination the only person that could have made the statement was Giarrusso.  However, Plaintiffs' counsel fails to appreciate the possibility that, while the corporation cannot speak, any number of other, unnamed individuals within RLD could have spoken on RLD's behalf.  As such, and for the other stated reasons, Plaintiffs' claims based on the false promises misrepresentation fails the particularity requirement of Rule 9(b) and Defendants' motion to dismiss both fraud claims based on this misrepresentation is **GRANTED WITH LEAVE TO AMEND**.

Plaintiffs' second assertion, "(b)," relates to the concealment and theft of inventory and is properly pled.  The Complaint sufficiently alleges that Britt became aware of information suggesting that inventory was being looted, that Giarrusso and Joseph knew that this was happening, that when confronted they lied to Britt to conceal and cover up the theft, and that they threatened litigation to induce Mercenary to extend the agreement to allow them to continue with their theft of Mercenary's property.  This is sufficient for purposes of Rule 9(b).  Therefore, Defendants' motion to dismiss Plaintiffs' fraud claims based on the concealment misrepresentation is **DENIED**.

## C. DEFENDANTS' MOTIONS TO STRIKE AND FOR A MORE DEFINITE STATEMENT WITH RESPECT TO THE FRAUD CLAIMS

Rule 12(f) permits a court to "order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); Sidney-Vinstein, 697 F.2d at 885.  Defendants ask this Court to strike the "false promises" allegation in Plaintiffs' fraud claim.  However, Plaintiffs allege intentional and negligent misrepresentation, and an essential element of those claims is a false

representation.  See Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996).  A false

promise necessarily encompasses a false representation.  As such, the "false

promises" allegation is not improper.  Even if a misrepresentation were not an

element of fraud, which it is, Plaintiffs' allegation is not "redundant, immaterial,

impertinent, or scandalous."  See Fed. R. Civ. P. 12(f); Sidney-Vinstein, 697 F.2d at

885.  In addition, the assertion that Plaintiffs "would not have retained Defendants,"

had they known the truth, (Compl. ¶ 82), similarly does not rise to the level of

scandalous or impertinent material, since it goes to Plaintiffs' reliance in extending the

contract in October 2003, after the alleged misrepresentations.  Therefore,

Defendants' motion to strike these allegations is **DENIED**.

Rule 8(a) provides that a complaint must set forth "a short and plain statement

of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).  As

a corollary, Rule 12(e) provides that "[i]f a pleading . . . is so vague or ambiguous that

a party cannot reasonably be required to frame a responsive pleading, the party may

move for a more definite statement."  Fed. R. Civ. P. 12(e).

Defendants seek a more definite statement with respect to Plaintiffs' fraud

claims, but provide absolutely no discussion or analysis on the issue.  The Court does

not believe that these claims are "so vague or ambiguous" that Defendants are

unable to form a responsive pleading.  Indeed, the concealment misrepresentation

pleading does not even fail Rule 9(b)'s requirements; it certainly does not require a

more definite statement.  Accordingly, Defendants' motion for a more definite

statement is **DENIED**.

### D. Plaintiffs' Constructive Trust Claim Must Be Dismissed

Defendants assert that Plaintiffs' constructive trust claim is improperly pled

since it is a remedy and not a separate claim for relief.  (Mot. at 13).  The Court

agrees.  This Circuit holds that "a constructive trust is a remedial device, not a

substantive claim on which to base recovery."  Lund v. Albrecht, 936 F.2d 459, 464

(9th Cir. 1991).  That is, "[i]n an action for constructive trust one must plead facts

1  constituting the cause of action, such as fraud, breach of fiduciary duty, etc." <u>Ehret v.</u>

2  <u>Ichioka</u>, 247 Cal. App. 2d 637, 642 (Ct. App. 1967).  Plaintiffs have alleged causes of

3  action such as fraud and conversion that might support the remedy of a constructive

4  trust, but constructive trust itself is not a distinct cause of action.  Therefore,

5  Defendants' motion to dismiss Plaintiffs' cause of action for constructive trust is

6  **GRANTED** and it is **DISMISSED WITH PREJUDICE** as to Plaintiffs' ability to replead

7  the remedy as a cause of action, but **WITHOUT PREJUDICE** as to Plaintiffs' ability to

8  replead it in the prayer for relief.

9                                             III.

10                                      **CONCLUSION**

11          As set forth above, Defendants' motion to dismiss various claims in Plaintiffs'

12  Complaint is **GRANTED IN PART** and **DENIED IN PART**.  Every cause of action

13  dismissed by the Court is dismissed **WITHOUT PREJUDICE** and Plaintiffs are

14  granted leave to amend, except as set forth in detail for Plaintiffs' constructive trust

15  claim.

16          To the extent that any cause of action was dismissed, Plaintiffs may file a First

17  Amended Complaint no later than **Monday, March 6, 2006.**

18

19          IT IS SO ORDERED.

20

21  DATED: February 7, 2006

22

23

24                                      Judge Gary Allen Feess
                                        United States District Court
25

26

27

28